IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JULIE KEASCHALL, AND Personal Representative of the Estate of Kurtis Keaschall, deceased; and DAWSON PUBLIC POWER DISTRICT,<br><br>                Plaintiffs,<br><br>    vs.<br><br>ALTEC INDUSTRIES, INC., AND OSBORNE INDUSTRIES, INC.,<br><br>                Defendants. | 4:14CV3070<br><br>**MEMORANDUM AND ORDER** |

      This matter is before the court on Defendants' motions to compel. ([Filing No. 51](); [Filing No. 58]()). Defendants request an order allowing their experts to inspect and perform destructive testing on the aerial lift platform at issue in this case. Plaintiffs do not object to inspection and testing, but they do object to the sample size the defense experts intend to extract to perform their inspections and testing. For the reasons stated below, the motions to compel will be granted.

## BACKGROUND

      Defendant Osborne Industries, Inc. ("Osborne") manufactures and sells insulated boom buckets for use on aerial power equipment. Defendant Altec Industries, Inc. ("Altec") incorporates the buckets into power equipment that is then sold. Around 2005, Osborne sold an insulated boom bucket to Altec. Altec assembled the insulated bucket on an aerial boom truck and sold the truck to Plaintiff, Dawson Public Power District ("DPPD"). On June 6, 2012, Kurtis Keaschall was operating the aerial boom truck during his employment with DPPD when the insulated boom bucket separated from the truck and dropped to the ground, injuring Kurtis and causing his death.

Julie Keaschall, personal representative of the estate of Kurtis Keaschall, and Dawson Public Power District ("DPPD"), filed this lawsuit alleging claims of negligence, breach of warranty, and strict products liability against Defendants. Plaintiffs' products liability claim alleges the insulated boom bucket and its component parts were defective. The material strength and composition of the aerial lift bucket is a material issue in this case.

The aerial lift and insulated boom bucket are in the possession and control of DPPD. At this point, each party has performed a visual examination of the bucket and have taken a numerous photographs of the bucket and its fracture points. Plaintiffs' expert has completed an expert report. As early as July of 2015, the parties discussed Osborne's desire and specific proposed protocol for destructive testing on portions of the bucket. But they have been unable to agree upon the testing to be done. Plaintiffs have performed no destructive testing on the bucket.

Defendants request access to the bucket to complete their own material strength analyses and chemical composition testing to prepare their expert reports. Specifically, both Defendants seek to complete destructive testing and an examination with a stereomicroscope and a scanning electron microscope of three areas of the break in the insulated bucket. In order to complete their proposed testing, Osborne requests certain samples be removed from the bucket's fracture points. The approximate size of each sample sought is:

- Sample A – 6"x4"x3"
- Sample B – 3"x3"
- Sample C – 1.5"x2"

Of those samples, only a fingernail size of each is required for destructive testing. Defendants state they will return the remaining portions of the samples to the Plaintiff after examination.

Plaintiffs object to the removal of these samples arguing only a fingernail-sized portion should be taken for destructive testing and allowing any more would amount to destroying evidence.

ANALYSIS

The scope of permissible discovery is extremely broad and parties may obtain "discovery regarding any nonprivileged matter that is relevant to any party's claim or defense including the existence, description, nature, custody, condition, and location of any documents . . . ." [Fed. R. Civ. P. 26(b)(1)](). "A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of the action." [Gladfelter v. Wal-Mart Stores, Inc., 162 F.R.D. 589, 590 (D. Neb. 1995)]().

Destructive testing of evidence is governed by Rule 34 of the Federal Rules of Civil Procedure. [Marolf v. Aguirre, No. 409cv3221, 2011 WL 6012203, *4 (D. Neb. Dec. 1, 2011)](). Under Rule 34(a)(1)(B), a party may request any other party to permit the requesting party to "'inspect, copy, test, or sample' any 'designated tangible things.'" Id. (quoting [Fed. R. Civ. P. 34(a)(1)(B)]()). It is within the sound discretion of the trial court to grant an opposed request for destructive testing. [Ostrander by Ostrander v. Cone Mills, Inc., 119 F.R.D. 417, 419 (D. Minn. 1988)](). The court must balance the interests to be served by the testing against the value of preservation of evidence. [Id. at 420]().

Plaintiffs state they do not object to Defendants request to obtain portions of the bucket for destructive testing; they object to the size of the samples which defendants intend to remove. Plaintiff's expert states that the bucket shows visual evidence of "numerous ply delaminations." ([Filing No. 55 at CM/ECF p. 2]()). And while these flaws

3

may be seen in photographs, "the full extent can only be seen upon visual examination," (filing no. 55 at CM/ECF p. 2), and "the photographs are insufficient to convey the fracture surface to a jury." (Filing No. 55 at CM/ECF p. 3). Accordingly, Plaintiffs argue the bucket should be left intact for demonstrative purposes and Defendants should be allowed to take only the fingernail-sized samples for destructive testing.

Defendant Osborne's expert states he requires the requested sample sizes so that he may "identify and capture images of features on the fracture surface including rub marks, dirt and debris, discoloration, features associated with fabrication and fractographic features." (Filing No. 60-1 ¶10 at CM/ECF pp. 2–3). He states it is necessary to inspect the bucket in a laboratory setting and to utilize a microscope to examine the fracture surface. (Filing No. 60-1 ¶6 at CM/ECF pp. 2). He states removing material for destructive testing without first examining the surface under a microscope would make it difficult to interpret the results of the destructive testing. (Filing No. 60-1 ¶ 11 at CM/ECF p. 3).

Osborne is willing to provide Plaintiffs with the opportunity to further photograph, video, and inspect the bucket prior to extracting the requested samples. Osborne states very little of the samples will be destroyed or consumed—only fingernail sized portions—and the samples can be returned to the Plaintiffs and reincorporated to the bucket for Plaintiffs' demonstrative use. They state the overall effect of their testing on the samples will be "minimal, if it is even noticeable." (Filing No. 59 at CM/ECF p. 2).

The bucket and fracture surfaces will not be entirely consumed by Defendants' proposed testing and the samples will still be available for the Plaintiffs to use as demonstrative evidence for the jury. Plaintiffs also have a large number of photos that closely show the bucket's fractured surface. Plaintiffs concerns are insufficient to outweigh the Defendants' interests and need to procure expert and scientific evidence for

their defense, especially as the samples are able to be returned mostly intact and used as evidence at trial.

Defendants' motion to compel will be granted, and Plaintiff will be allowed additional inspection and photographs, video, etc. to be taken before Defendants extract the samples. Any sample removal shall be completed in accordance with Defendant Osborne's most recent proposed protocol for destructive testing dated November 12, 2015, preserving as much of the fracture surface as possible for demonstrative purposes at trial. After Defendant Osborne's testing, the samples will be provided to Defendant Altec for testing under the same protocols. After all Defendants' testing is complete, the samples shall be returned to Plaintiff.

IT IS ORDERED that Defendants' motions to compel, ([Filing Nos: 51](#) and [58](#)), are granted as more fully stated in this order.

Dated December 21, 2015.

BY THE COURT:

s/[Cheryl R. Zwart](#)
United States Magistrate Judge