IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JULIE KEASCHALL, Personal Representative of the Estate of Kurtis Keaschall, deceased and DAWSON PUBLIC POWER DISTRICT, | ) ) ) ) ) | CASE NO. 4:14-CV-03070 |
| Plaintiffs, | ) ) ) | **PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF JULIE KEASCHALL'S** |
| v. | ) ) | **MOTION TO EXCLUDE EXPERT TESTIMONY (*Daubert* Motion)** |
| ALTEC INDUSTRIES, INC. and OSBORNE INDUSTRIES, INC. | ) ) ) | |
| Defendants. | ) | |

Plaintiff Julie Keaschall, Personal Representative of the Estate of Kurtis Keaschall ("Keaschall"), by its attorneys, Rembolt Ludtke LLP and Larry W. Beucke, respectfully submits this brief in support of the request for an Order barring each of the experts for the Defendants, Ben T. Railsback and Anand R. Shah, from testifying about or offering any expert opinion regarding Kurtis Keaschall's failure to connect a safety lanyard to a D-ring located on the boom bucket which separated and the effect, if any, of such failure to connect. Each expert's report is neither reliable nor relevant, which are two of the requirements of Rule 702 and the United States Supreme Court.

**FACTUAL BACKGROUND**

**I.     The case background**

On June 6, 2012, Kurtis Keaschall was unfastening hardware from a utility pole which was going to be removed. (Ex. 1, Hobelman dep. 42:1-19) Mr. Keaschall was approximately 25 feet above the ground, standing in an insulated boom bucket manufactured by Osborne Industries, Inc. ("Osborne"). (Doc. 9, ¶ ¶ 6,8). Altec Industries, Inc. ("Altec") assembled the bucket onto a boom truck, including designing and placing a D-ring onto the bucket as an attachment point for a worker's lanyard. (Doc. 16, ¶ ¶ 9-10; Ex. 2, Chard dep. 51:3-5). The

boom bucket separated from the boom truck causing both the bucket and Mr. Keaschall to fall to the ground approximately 25 feet below. (Ex. 3, Sherman County Sheriff's Office Report; Ex. 4, B. Railsback Report, at 12, Fig. 9) Mr. Keaschall suffered severe personal injuries from the fall which ultimately caused his death. (Ex. 4, B. Railsback Report, at 3) The principal liability issue in this case is what caused the boom bucket to fail.

## II.  Defendants' expert reports

Plaintiff retained John Eihusen, P.E., to provide expert testimony regarding the cause of the boom bucket's failure. Defendant Osborne retained Ben T. Railsback, M.S., P.E. and Joseph F. Rakow, Ph.D., P.E. to provide expert testimony, while Altec retained Anand R. Shah, M.S., M.B.A., P.E. as its expert. Both Mr. Railsback and Mr. Shah included among their opinions that a proximate cause of Mr. Keaschall's injuries was his failure to attach a safety lanyard to the D-ring located in the boom bucket. (Ex. 4, Railsback Report, at 28; Ex. 5, Shah Report, at 26).

In his expert report, Mr. Railsback discusses at length his investigation into the cause of the boom bucket failure, including the tests he conducted with respect to his opinions. (Ex. 4, Railsback Report, at 20-27). In addition to his opinion regarding the cause of the boom bucket's failure, Mr. Railsback also discusses the fact that, while Mr. Keaschall was wearing a safety harness, he apparently had not connected the safety lanyard from the harness to the D-ring located on the boom bucket. (*Id.* at 28). Mr. Railsback further discusses OSHA regulations, an ANSI standard, and the operator's manual that require the use of a safety harness and lanyard when working at the height Mr. Keaschall was working on the day of the incident. (*Id.* at 26-28). Nowhere in his report does Mr. Railsback reference any inspection of or testing he did on the D-ring attached to the failed bucket, nor to any testing he did with respect to the likelihood that the safety harness, if attached,

2

would have prevented Mr. Keaschall's fall or any personal injuries. Mr. Railsback concludes:

> Mr. Keaschall's failure to follow the warnings stated in the operator's manual, OSHA regulations, and ANSI standard regarding external loading of the bucket ***and attaching a lanyard to the boom***, directly resulted in the bucket separating from the boom and directly resulted in Mr. Keaschall falling 22 feet to the ground. The failure to follow the operator manual warnings, OSHA regulations, and ANSI standard is the probable cause of the accident.

(*Id.* at 28).

Mr. Shah describes in his expert report the inspection and testing he did on the failed boom bucket and on exemplar boom buckets to support his opinion about the cause of the failure. (Ex. 5, Shah Report, at 6-25). He also spends substantial time in his report challenging the opinions of Plaintiff's expert, John Eihusen, including the following:

> Opinion 10 neglects to note that there is a redundant structural component in the form of a D-ring provided to directly attach the operator to the primary boom structure to protect the user in the event of a platform incident. This D-ring was not in use by the operator at the time of the incident and would have restrained the operator and prevented the fall to the ground.

(*Id.* at 25). Despite no reported testing of that D-ring, Mr. Shah provides the following concluding opinion that he expects to offer at trial:

> The fall of Mr. Keaschall could have been prevented had Mr. Keaschall properly attached a lanyard securing himself to the D-ring intended for this purpose, which remained attached to the section of the upper boom.

(*Id.* at 26). Although not a retained expert, Altec has identified Joshua Chard as providing expert testimony in connection with this case. Mr. Chard did not provide an expert report,

3

but he was deposed by plaintiff on April 2, 2015. During the course of his deposition, Mr. Chard testified as follows:

> Q. (By Mr. Beucke): All right. You talked earlier about the D ring that was attached to the platform rib. On Exhibit 12, is that D ring shown on Figures 124 and 125?
>
> A. Yes.
>
> Q. And is the purpose of this D ring to attach some type of safety harness that's attached to the operator?
>
> A. Yes. So I would call that the fall protection anchor. So that is where the lanyard for the personal fall protection equipment for the operator is attached.
>
> . . . .
>
> Q. And what's the purpose of this equipment?
>
> A. To prevent – in the event that an occupant is exposed to a fall, it would prevent them from reaching the ground if they are attached.
>
> Q. If they fall out of the bucket?
>
> A. Correct.
>
> Q. Is it also designed to stop a fall if the bucket collapsed as did in this case?
>
> A. That is not part of the design intent really. The design intent is someone who has fallen as opposed to the destruction of the platform.
>
> . . . .
>
> Q. (By Mr. Beucke): Okay. Exhibit 22, have you seen that –
>
> A. Yes, I have seen this before.
>
> Q. And what is it?
>
> A. I would call this a product update notice that we did in July of 2010 adding a secondary retention strap to rib-mounted anchors.
>
> Q. And does this relate to this D-ring that we were talking about?

4

>A. Yes. And it relates to the fact, as I said a few moments ago, the original design of that rib-mounted anchor did not anticipate or attempt to protect against catastrophic failure of the platform. And so this bulletin adds a secondary retention strap that, in the event of catastrophic failure of the platform, the anchor remains attached to the boom tip.
>
>Q. What prompted this change?
>
>A. Prior to this, in the 2004 time frame, we had an accident involving a telephone – a utility pole that broke off and fell on the platform and tore it off the unit. And it resulted in a fatality.

(Ex. 2, Chard dep., 61:2 – 65:3). The boom truck and bucket at issue in this case were delivered to Dawson Public Power in August 2005. (*Id.* 16:17-25). Altec altered the design of the D-ring in 2010 to include a secondary retention strap specifically to protect against catastrophic bucket failures. (Id. 64:9-18).

Neither Mr. Railsback nor Mr. Shah account for the testimony of Mr. Chard that the D-ring, at the time the boom bucket in question was manufactured, was not designed to prevent an occupant from falling in the event of the catastrophic failure of the bucket as occurred in the case at hand. Despite Mr. Chard's uncontroverted testimony, Mr. Railsback testified during his deposition as follows:

>Q. (Mr. Buecke) Okay. The lanyard is not designed to prevent injury in the -- in the event of a bucket failure? Would you agree with that?
>
>A. I don't know whether I agree or disagree with that statement. I mean, it's -- it's certainly meant to prevent a fall.

Mr. Railsback's testimony is directly at odds with the uncontroverted design intent from the company that assembled the D-ring. During Mr. Shah's deposition, he was asked whether he considered design changes made to the D-ring in coming to his conclusions. Mr. Shah

5

responded he only considered the D-ring modification as "an example of Altec attempting to meet the industry requirements." (Ex. 6, Shah dep. 94:5-21). Mr. Shah never considered the fact the original D-ring was not designed to protect workers against catastrophic bucket failure.

Moreover, neither Mr. Railsback nor Mr. Shah did any testing of the D-ring involved in the suspect boom bucket to determine whether, in fact, it would have prevented Mr. Keaschall from falling 22 feet to the ground, although they each rendered an opinion that is the case. Mr. Railsback was directly asked if he did any analysis regarding where the lanyard would have ended up if it was attached. He responded "I would assume that [Decedent] would end up below the lanyard attachment point." 88:3-7. When asked not to assume, Mr. Railsback provided the layperson response that gravity would suspend Decedent below the attachment point. *Id*. 88:8-12. Neither Mr. Railsback or Mr. Shah did any testing or substantive analysis of the D-ring in a catastrophic bucket failure event.

## ARGUMENT

**I.     Mr. Railback's and Mr. Shah's opinions with respect to Mr. Keaschall's failure to attach the lanyard are neither relevant nor reliable.**

The opinions of Mr. Railback and Mr. Shah with respect to the impact of Mr. Keaschall's failure to attach the lanyard to the D-ring must be barred because they are neither reliable nor relevant. Both individuals fail to consider the fact that the D-ring in the boom bucket at issue was not designed to prevent an occupant from falling in the event of a catastrophic failure like occurred in this case, and further both failed to perform any test on the D-ring to determine whether, in light of the catastrophic failure of the boom bucket, it would have withstood the forces experienced if Mr. Keaschall had attached the lanyard.

Before either of their testimony regarding the D-ring can be presented at trial, it must meet the requirements of expert testimony. Expert testimony must be both (1) relevant,

and (2) reliable. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006). *See Daubert v. Merrell Dow Pharmaceuticals*, 509 U.S. 579 (1993). If it is not, that expert's opinion must be barred. *See id.* This inquiry is designed to bar any testimony or opinion that "is speculative, unsupported by sufficient facts, or contrary to the facts of the case." *Id.*

The relevance and reliability requirements arise out of Federal Rule of Evidence 702. *See Barrett v. Rhodia, Inc.*, 606 F.3d 975, 980 (8th Cir. 2010). Federal Rule of Evidence 702 provides:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702 (2015). It is this Court's obligation to perform a "gatekeeping" function to bar irrelevant and unreliable expert testimony that does not meet the requirements of Rule 702. *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 149 (1999). Here, the reports and opinions of Mr. Railsback and Mr. Shah with respect to the failure to use the lanyard are both irrelevant and unreliable. They are speculative, not based on sufficient facts or data, and are based upon unreliable principles and methods. Thus, for the reasons set forth below, the report and opinions of Mr. Railsback and Mr. Shah with respect to the failure to use the lanyard and the impact, if any, of such failure, must be barred.

> **A. The reports and opinions of Mr. Railsback and Mr. Shah are not relevant because they rely on speculation and lack sufficient facts.**

The reports and anticipated testimony of Mr. Railsback and Mr. Shah are not relevant because the defendants have not shown that they considered the relevant facts, including specifically, the fact that the D-ring on the boom bucket at issue was not designed to prevent an occupant from falling in the event the bucket experienced a catastrophic failure like occurred in the case at hand. Despite uncontroverted testimony from an Altec representative confirming the D-ring design intent, Mr. Railsback specifically stated he did not know if the design was intended to prevent injury in the case of bucket failure. (Ex. 7, Railsback dep. 88:23 – 89:3). The gap between the opinions that they provide and the facts upon which they relied is too great and, thus, their opinions are not relevant. To prove that the expert testimony is relevant, the proponent must show that the expert considered the relevant facts and that the expert's reasoning or methodology was applied properly to the facts at issue. *Marmo*, 457 F.3d at 758. Those facts cannot be speculative and must be supported by sufficient evidence. *Id.* at 757. When the analytical gap between the relied upon data and the proffered opinion is too great, the opinion must be excluded. *Id*. at 758.

Several courts have explained what comprises an "analytical gap" and in what circumstances an expert's opinions must be exluded. In *Marmo*, the Eighth Circuit blocked an expert opinion regarding what caused the plaintiff's physical injuries when that expert failed to gather the necessary facts, including physically examining the plaintiff himself and determining whether she had other toxic exposures. *Marmo*, 457 F.3d at 758. Similarly, in *Mayo Clinic v. Elkin*, an expert's opinion regarding the similarity of certain source code was barred when the expert had not reviewed the source code itself. *Mayo Clinic v. Elkin, No. CIV 09-322 DSD/JJK, 2010 WL 5421322, at *6 (D. Minn. Dec. 27, 2010)*. Without having reviewed the source code, the expert had no "factual basis for his opinion" and, thus, his opinion was barred. *Id*. Further, in a railroad accident case, a locomotive engineer

expert was barred from testifying regarding what the engineers should have observed on the railroad tracks because his opinion "was not sufficiently founded on facts." *Guidroz-Brault v. Missouri Pacific R. Co.*, 254 F.3d 825, 830 (9th Cir. 2001). Specifically, the expert had no factual basis regarding what was visible on the tracks. *Id.*

As with the experts in the cases cited above, Mr. Railsback and Mr. Shah failed to gather and consider the necessary facts to render their opinions regarding the impact, if any, of Mr. Keaschall's failure to attach the lanyard to the D-ring in the failed boom bucket. Specifically, they failed to acknowledge the fact that the D-ring was not designed to arrest the fall of an occupant in the event of the catastrophic failure of the bucket like occurred in this case. Indeed, nowhere in their respective reports do they reference this critical fact regarding the design of the boom bucket, and therefore, it is inconceivable that such fact was considered in rendering their opinion. Mr. Railsback specifically denies knowledge of this fact in his deposition. (Ex. 7, Railsback dep. 88:23 – 89:3). When asked about the impact of the D-ring design on his opinions, Mr. Shah admitted he only considered such information in determining whether Altec met industry standard. (Ex. 6, Shah Dep. 94:5-21) Mr. Shah did not consider the D-rings intended design in coming to his opinion an attached lanyard would have prevented Decedent's fall when the bucket catastrophically failed. Consequently, not only do these experts fail to acknowledge a critical fact, the fact they ignore significantly undercuts the affirmative opinions they express. Without providing a link or explanation between the underlying design facts as stated by Mr. Chard and the ultimate opinion regarding the efficacy of the D-ring attached to the failed bucket, the opinions of Mr. Railsback and Mr. Shah are speculative and without sufficient evidence, which is prohibited by Federal Rule of Evidence 702 and by *Daubert-Kumho*. Consequently, Mr. Railsback's and Mr. Shah's testimony regarding the impact of Mr. Keaschall failing to attach the lanyard to the D-ring should be barred.

### B. The expert report and anticipated testimony of Mr. Railsback and Mr. Shah regarding the impact of Mr. Keaschall's failure to attach the lanyard to the D-ring is not reliable.

Even a cursory review of the reports of Mr. Railsback and Mr. Shah show neither of them did a single test on the D-ring at issue in this lawsuit. Both experts spend considerable time in their reports discussing various tests they performed on the failed boom bucket and various exemplars; however, they fail to identify a single test on the D-ring. Indeed, there is no evidence either of them even examined that D-ring, yet they opine that because it was there, it would have prevented Mr. Keaschall from falling 22 to 25 feet to the ground.

To meet the reliability requirement for expert reports and testimony, the party offering the expert testimony "must show by a preponderance of the evidence both that the expert is qualified to render the opinion ***and that the methodology underlying his conclusions is scientifically valid.***" *Marmo*, 457 F.3d at 757-58; Barrett, 606 F.3d at 980 (emphasis added). In this case, however, Mr. Railsback and Mr. Shah never disclose the methodology they used to insure their conclusion regarding the D-ring is scientifically valid. When asked about any analysis he did regarding the lanyard and D-ring, Mr. Railsback testified he simply assumed Decedent would end up below the lanyard attachment point. (Ex. 7, Railsback dep. 88:3-7). Given the catastrophic failure of the boom bucket, it is unreasonable to assume that a portion of that same bucket, made at the same time, and out of the same materials, would inherently perform satisfactorily. At a minimum, given the circumstances of this case, it is incumbent on such experts to at least examine, and likely test, the structural integrity of the portion of the bucket containing the D-ring to ensure its ability to withstand the forces to which it would have been subjected if Mr. Keaschall would

10

have attached the lanyard. In the absence of any such tests, there is no ***scientifically valid*** methodology to support the opinions; indeed, there is no methodology at all.

In *Smith v. Cangieter*, 462 F.3d 920 (8th Cir. 2006), an expert in a motor vehicle accident opined that the drive mechanism in a vehicle caused it to become unstable at highway speeds. The trial court excluded the expert's testimony finding that "the lack of testing, peer review, or acceptance by the scientific community" undermined the reliability of the expert's opinion. *Id*. at 922-23. The appellate court affirmed the determination of the trial court to exclude the expert's testimony:

> [The expert] did not offer the results of any testing to demonstrate that his theory was accurate, and where there is no testing, there cannot be a known rate of error for the district court to consider. See *Peitzmeier v. Hennessy Indus., Inc.*, 97 F.3d 293, 298 (8th Cir. 1996). [The expert] did not present accident data, produce tests performed by others, or perform his own mathematical calculations in an attempt to predict the effects of the loss of traction. His approach had not been scrutinized by the scientific community, and there were no peer-reviewed articles in support of his opinion.

*Id*. at 924.

The same outcome occurred in *Pro Service Automotive, L.L.C. v. Lenan Corp.*, 269 F.3d 1210 (8th Cir. 2006). In *Pro Service Automotive*, a fire destroyed a building which the plaintiff attributed to the malfunctioning of a waste oil heater manufactured by the defendant. The plaintiff elicited the expert testimony of a chemical engineer who opined that a defect in the waste oil heater caused the fire to occur. The trial court excluded the expert's testimony and granted summary judgment to the manufacturer of the heater, and the plaintiff appealed. The appellate court affirmed the decision of the trial court to exclude

11

the expert's opinion and also affirmed that court's grant of summary judgment to the defendant. With respect to the expert's opinion, the appellate court concluded:

> [The expert] provided no testing or other engineering analysis to support his causation opinion. He relied on his expertise to state that the hole could cause a localized temperature rise at undefined points *inside* the heater but made no attempt to calculate where or how hot these "hot spots" would be, much less identify a known or potential error rate for his analysis. He then theorized that these unlocated and unquantified hot spots could result in a series of radiative or convective transfers of heat through the heater cabinet that eventually would reach the environment in sufficient amounts to ignite nearby combustibles. He provided no testing or mathematical analysis to quantify, even as a rough estimate, how much heat would be transferred through these processes and how it would compare to the heat necessary to ignite the combustible. . . . "Where 'opinion evidence . . . is connected to existing data only by the *ipse dixit* of the expert,' a district court 'may conclude that there is simply too great an analytical gap between the data and the opinion proffered.'" *Cangieter*, 462 F.3d at 924 (quoting *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146, 118 S. Ct. 512, 139 L.Ed.2d 508 (1997)). Such is the case here.

*Pro Service Automotive*, 469 F.3d at 1215-16.

*Cangieter* and *Pro Service Automotive* are strikingly pertinent to the case at hand. Neither Railsback nor Shah present any testing, analysis or other evidence to support their opinions that if Mr. Keaschall had connected a safety lanyard to the D-ring on a boom bucket that had experienced a catastrophic failure, and despite evidence from the manufacturer that the D-ring was not designed for such failures, he would not have fallen 22 to 25 feet to the ground, would not have died, and therefore, the proximate cause of his death was his failure to connect the safety lanyard. The opinions of Mr. Railsback and Mr.

12

Shah possess none of the characteristics of reliability required by Rule 702 and the standards adopted by the United States Supreme Court, and therefore, their testimony should be barred by this Court.

## CONCLUSION

The expert reports prepared by Mr. Railsback and Mr. Shah and any related testimony with respect to the D-ring and the impact, if any, of the failure of Mr. Keaschall to attach the lanyard, must be disregarded by this Court. The opinions expressed therein do not meet either the relevance requirement or the reliability requirement of the United States Supreme Court's test for expert testimony. These experts' failure to account for the testimony of Altec that the D-ring was not designed to prevent the fall of an occupant in the event of a catastrophic failure of the boom bucket, as well as their apparent failure to examine, let alone test, the D-ring make their opinions not reliable and not relevant. Plaintiff respectfully requests that this Court grant its Motion to Exclude Expert Testimony.

Dated May 10, 2017.

JULIE KEASCHALL as Personal Representative for the ESTATE OF KURTIS KEASCHALL, Defendants

By:    /s/ Mark R. Richardson
Peter C. Wegman (#16685)
pwegman@remboltlawfirm.com
Daniel E. Klaus (#17889)
dklaus@remboltlawfirm.com
Timothy R. Engler (#15940)
tengler@remboltlawfirm.com
Mark R. Richardson (#24719)
mrichardson@remboltlawfirm.com
REMBOLT LUDTKE LLP
1128 Lincoln Mall, Suite 300
Lincoln, NE 68508
(402) 475-5100

and

               Larry Beucke (#18444)
               lwb@pgbblw.com
               PARKER, GOSSART, BAHENSKY, BEUCKE,
                BOWMAN & SYMINGTON, LLP
               1516 1st Avenue
               Kearney, NE 68848-1600
               (308) 237-2114

## CERTIFICATE OF SERVICE

   The undersigned hereby certifies that on May 10, 2017, I caused a true and correct copy of the foregoing to be electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Steven E. Guenzel
JOHNSON FLODMAN GUENZEL
 & WIDGER
P.O. Box 81686
Lincoln, NE 68501
sgunezel@johnsonflodman.com
*Attorney for Plaintiff Dawson Public Power District*

Robert W. Shively
SHIVELY & LANNIN, PC, LLO
4400 S. 86th Street, Suite 100
Lincoln, NE 68526
rshively@shivelylaw.com
*Attorney for Defendant Altec Industries, Inc.*

Stephen L. Ahl
WOLFE, SNOWDEN, HURD,
 LUERS & AHL, LLP
1248 "O" Street, Suite 800
Lincoln, NE 68508
sahl@wolfesnowden.com
*Attorney for Defendant Osborne Industries, Inc.*

                /s/ Mark R. Richardson
               Mark R. Richardson (#24719)

4829-0401-1592, v. 1